UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KAREEM S. PERRY,

      Plaintiff,       **Hon. Hugh B. Scott**

                  06CV828

                  (CONSENT)

      v.             **Order**


GLENN S. GOORD, et al.,

        Defendants.



This Court[1] issued an Order to Show Cause (Docket No. 58) following discovery of certain admissions plaintiff made in actions in the Eastern District of New York that called into question the veracity of his allegations in this case. Counsel was to show cause why this action should not be dismissed on April 3, 2009 (id.), and the parties appeared on that date and the Court issued a further briefing schedule (Docket No. 60). Any defense motion on this issue was due by May 7, 2009, with plaintiff's response due by June 1, 2009, and any reply due by June 5, 2009, with the Court to then determine whether oral argument was required (id.).

---

[1]The parties consented to proceed before the undersigned as Magistrate Judge on November 16, 2007, Docket No. 18.

Defendants then filed the pending motion to dismiss (Docket No. 61[2]) based upon the allegations raised in the Order to Show Cause. Plaintiff, meanwhile, moved to file certain papers under seal and to proceed by pseudonym (Docket No. 65; see Docket No. 66 (plaintiff's motion for expedited hearing of motion to seal)), which was denied (Docket No. 67). As a result of plaintiff's motions, the Court extended the briefing schedule, with his response to defense motion to dismiss due by July 15, 2009, any defense reply due by July 20, 2009, and setting argument for July 29, 2009 (Docket No. 68; see Docket No. 71).

Also pending before the Court is defendants' motion for summary judgment (Docket No. 44). Responses to this motion initially were due by January 12, 2009 (Docket No. 54), but at the consented requests of appointed counsel for plaintiff (letters of Lisa Coppola, Esq., to Chambers, Jan. 8, 2009, and Feb. 2, 2009), responses were to be filed on or before April 13, 2009, and any reply was due on or before April 20, 2009 (Docket Nos. 55, 56, 57). Briefing and consideration of that motion were held in abeyance pending resolution of the issues surrounding plaintiff's prior litigation and its impact on his present case (Docket No. 58), issues raised in the Order to Show Cause and in defendants' motion to dismiss.

BACKGROUND

This case is one of a series of actions filed in this Court and in district courts across this state alleging similar (often repeated allegations of) deprivations by corrections officers after plaintiff alleged that other inmates harassed or assaulted him when they learned that plaintiff was

---

[2]In support of this motion, defendants submitted their memorandum of law, with exhibits, Docket No. 62, and their attorney's declaration, with exhibits (from Perry v. Fischer, No. 08CV602 (N.D.N.Y.)), Docket No. 70. In opposition, plaintiff submitted his attorney's declaration, his own affidavit, and a memorandum of law, No. 69.

an informant for a municipal law enforcement agency. The nature of plaintiff's repeated litigation and his handling of that litigation requires a somewhat involved discussion of these other cases as well as the present case at bar. First, the Court considers the antecedents to this present case, the facts and proceedings in that case, then it will discuss actions plaintiff commenced in other districts in this state.

*Earlier Attempt at Commencing this Action*

Plaintiff, an inmate then proceeding pro se, filed a Complaint in Perry v. Goord, et al., No. 06CV447E, that was dismissed (without prejudice) for plaintiff's failure to exhaust his administrative remedies (see Docket No. 47, Defs. Atty. Decl. ¶ 2, Ex. A, dismissal Order in Perry v. Goord, No. 06CV447, Docket No. 20).

*Facts of Present Action*

On December 15, 2006, plaintiff, while still incarcerated and proceeding pro se, alleged in this civil rights action that defendants (prison employees and officials[3] at Elmira Correctional Facility ("Elmira")) failed to protect him while in that facility, in violation of his Eighth Amendment rights (Docket No. 1, Compl.). Plaintiff alleged that he was involved with New York City Department of Investigations in 2005 and inmates learned of this and subjected plaintiff to repeated assaults. In May 2006, plaintiff wrote to then-Commissioner Goord requesting a transfer from Elmira to another facility; that request was denied. On June 18, 2006,

---

[3]Defendant Goord retired as Commissioner on August 28, 2006, Docket No. 48, Goord Decl. ¶ 1; Docket No. 45, Defs. Statement ¶ 6. Defendant Burge was the Superintendent of Elmira, defendant Henderson was Deputy Superintendent of Security at Elmira, defendant Cronin was Acting Deputy Superintendent for Program Services at Elmira, while defendant Mootz was a correction counselor there (Docket No. 45, Defs. Statement ¶¶ 7-10; see Docket No. 8, Ans.).

plaintiff claimed that inmates attempted to assault him.  On June 23, 2006, plaintiff asked defendant Superintendent Burge for a transfer; Burge referred the letter to defendant Henderson. Plaintiff was offered protective custody but he refused it.  Plaintiff wrote again to Goord requesting a transfer, which was denied.  Plaintiff learned that inmates were planning to place a cocktail bomb in his cell and he notified Burge in July 6, 2006, of the plot.  Burge referred that notice to Henderson and defendant Cronin.  Plaintiff then again requested protective custody.[4]

Plaintiff sought treatment from the facility's mental health doctor due to plaintiff's fear and mental anguish.  Plaintiff alleges that the doctor said he would speak to Henderson about this and Henderson said that he would take care of the matter but did not.  On July 25, 2006, plaintiff raised matter with defendant Mootz requesting protective custody and for Mootz to investigate to confirm plaintiff's story.  Mootz refused and denied the protective custody request.  On August 7, 2006, plaintiff claimed that he was slashed in neck and left wrist by another inmate[5].  On the next day, plaintiff was removed from his cell block and placed in G-Block.  Plaintiff alleged that he was afraid for being placed there and raised concerns with Burge.  Burge replied that a request for protective custody would take three to four days.  Plaintiff remained in G-Block for 42 days. Plaintiff again requested protective custody from Mootz on Aug. 24, 2006, but Mootz was only willing to grant Involuntary Protective Custody.  Plaintiff filed a grievance and signed a protective custody waiver but no involuntary protective custody report was made out.  While in

---

[4]According to defendants in <u>Perry v. Fischer</u>, No. 08CV602 (N.D.N.Y.), plaintiff also alleged this in his Eastern District of New York action, <u>Perry v. Caruso</u>, No. 07CV1115, <u>Fischer</u>, No. 08CV602, Docket No. 56, Defs. Memo. at 8.

[5]Plaintiff also alleges this incident in his pending action in the United States District Court for the Northern District of New York, <u>Perry v. Fischer</u>, No. 08CV602, Docket No. 56, defendants' memorandum of law, at 3.

general population on G-Block, plaintiff again claimed that he was threatened and spat upon by other inmates, and as a result plaintiff refused to shower or eat out of fear of retribution. Plaintiff arranged to be placed in special housing unit to avoid harm. Plaintiff then was transferred to Upstate Correctional Facility but claimed to have remained in fear. (Id.)

Plaintiff sought to recover for his emotional distress from the June 18, 2006, attempted assault and from the laceration of his neck, wrist and mental anguish from the August 7, 2006, incident, seeking $500,000 in compensatory damages jointly and severally among the defendants and $100,000 punitive damages against each defendant. (Docket No. 1, Compl.) He also sought an injunction removing plaintiff from a double celling list, his transfer either to Southport or Downstate Correctional Facilities, and a Temporary Restraining Order to transfer plaintiff to a single cell (id.). Plaintiff's requests for a Temporary Restraining Order and an injunction were denied in the Order granting him in forma pauperis status (Docket No. 5). Defendants here argue that plaintiff's allegations "are very similar" to those raised in the Eastern District of New York in Boyd and Caruso (Docket No. 62, Defs. Memo. at 3, Exs. A, B).

*Proceedings to Date*

As noted by defendants in their motion to dismiss (<u>see</u> <u>id.</u> at unnumbered first page and at 1, 2), plaintiff listed other federal actions he commenced, including <u>Perry v. Boyd</u>, No. 06CV3958 (E.D.N.Y.), and may have misrepresented the litigation history in three actions in other districts (<u>id.</u> at 2, citing <u>Perry v. Caruso</u>, No. 07CV1115 (E.D.N.Y.), <u>Perry v. James</u>, No. 07CV3722 (S.D.N.Y.), <u>Perry v. Burns</u>, No. 08CV5272 (E.D.N.Y.), Exs. B-D).

Plaintiff was granted <u>in forma pauperis</u> status (Docket No. 5; <u>see</u> Docket No. 2, plaintiff's motion). Goord did not answer; the remaining defendants answered on August 14, 2007 (Docket No. 8[6]), and that Answer noted that plaintiff voluntarily discontinued his claim against defendant Goord (<u>id.</u> at 1 n.1; Docket Nos. 3, 45, Defs. Statement ¶ 2).

Later, upon plaintiff's application (<u>see</u> Docket No. 33), the Court (on June 30, 2008) appointed counsel to represent him in this action (Docket No. 37).

*Defense Motion for Summary Judgment*

Defendants filed their motion for summary judgment (Docket No. 44). There, they argue that they did not violate plaintiff's Eighth Amendment rights (Docket No. 46, Defs. Memo. at 2-7). They contend that they were not deliberately indifferent to plaintiff's requests for placement in protective custody (<u>id.</u> at 3-4). Plaintiff applied for protective custody in July 2006 and was denied and he applied in August 2006 but then changed his mind and signed a protection waiver

---

[6]Plaintiff submitted a letter notice, Docket No. 3, stating that he was "excusing Commissioner Glenn S. Goord as a defendant" in this action, concluding that service upon Goord would not be necessary. Nevertheless Goord filed a returned executed summons, Docket No. 10, but separate from the other defendants, Docket No. 7. Later, Goord has filed a declaration in support of pending defense motion for summary judgment, Docket No. 48, denying any personal involvement in this matter, <u>id.</u>, Goord Decl. ¶¶ 2-7.

(id. at 4). Defendants note the absence of medical documentation to support plaintiff's claim (id. at 4, 6-7). They argue that plaintiff's mere fear for his safety (absent proof of actual injuries) is not sufficient to state a claim for failure to protect in violation of plaintiff's right not to endure cruel and unusual punishment (id. at 5). Defendants further contend that Goord, Burge, Henderson, Cronin, and Mootz lack the requisite personal involvement to hold any of them liable (id. at 7-10). They next argue that plaintiff failed to exhaust his administrative remedies and is thus barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (id. at 10-12). Finally, defendants claim entitlement to qualified immunity (id. at 12-14).

*Plaintiff's Prior Actions in this Circuit*

The Court has taken judicial notice of the filings by plaintiff in other federal districts in this state, see Fed. R. Evid. 201. This review of the PACER electronic database, U.S. Party/Case Index (https://pacer.uspi.uscourts.gov/cgi-bin/dquery.pl), initially was undertaken because plaintiff filed a new action, Perry v. Napoli, No. 09CV12S, and sought in forma pauperis status. The PACER report reveals that plaintiff has filed over thirty cases in the last twelve years in the United States District Courts in this state, including six cases in the Western District excluding the instant case[7]. Excluding two habeas corpus proceedings[8], plaintiff has filed twenty-nine civil

---

[7]As of March 25, 2009, plaintiff had two open actions in this District, Perry v. Goord, No. 06CV828Sc, and Perry v. Napoli, No. 09CV12S. In addition to the earlier attempt in No. 06CV447 to sue Commissioner Goord (and resulting in the pending action) discussed above, plaintiff also filed the following actions in this Court, Perry v. Moscicki, No. 00CV623 (action dismissed on plaintiff's request to withdraw complaint); Perry v. Goord, et al., No. 01CV82 (plaintiff's motion to withdraw complaint granted); Perry v. Kelly, et al., No. 01CV727 (action dismissed on plaintiff's letter request to withdraw complaint); Perry v. Faulkner, No. 02CV241 (case settled).

[8]Perry v. Bennet, No. 97CV1074 (E.D.N.Y.); Perry v. Woods, No. 07CV341 (E.D.N.Y.).

rights cases, most arising from a fact pattern similar to the one alleged in this case. Of those

twenty-nine civil rights actions[9] commenced by plaintiff, only eight currently are active, the

twenty-one others were closed. Where the dockets in these cases disclose a reason, of the

sixteen[10] terminated actions, eight were voluntarily withdrawn, while four were settled, and four

were dismissed by Order. As noted by Judge Brian Cogan of the Eastern District of New York

(in dismissing another case for failure to state a claim), plaintiff had voluntarily withdrawn a

number of cases or had been dismissed on defense motions. See Perry v. Burns, No. 08CV5272

(E.D.N.Y., Jan. 9, 2009), Docket No. 5, Order at n.1 (dismissing Complaint there pursuant to

28 U.S.C. § 1915(e)(2)(B)).

*Admitted "Fraud upon the Court"*

Moreover, a review of these cases discloses that plaintiff has admitted to having

committed "fraud upon the court" in one or more of his previous actions. By Order dated

January 15, 2008, and entered in two actions plaintiff had commenced in the Eastern District of

New York, Judge Cogan ordered plaintiff to show cause why sanctions should not be imposed

upon him as a result of statements he had made in letters to the defendants in those actions

admitting that he had filed complaints which had no basis in fact. Perry v. Boyd, No. 06CV3958

(Docket No. 31); Perry v. Caruso, No. 07CV1115 (Docket No. 26). Boyd and the Caruso action

---

[9]Of these listed cases, plaintiff has five open actions pending in other federal courts in
New York, see Perry v. Torres, No. 08CV9298 (S.D.N.Y.); Perry v. Stephen, No. 08CV3586
(S.D.N.Y.); Perry v. Madell, No. 02CV2196 (S.D.N.Y.); Perry v. Tichler, 06CV1361
(N.D.N.Y.); Perry v. Deazevedo, No. 08CV86 (N.D.N.Y.).
    Subsequent review found an additional case, Perry v. Fischer, 08CV602 (N.D.N.Y.)
which was under seal until recently, id., Docket No. 60, Order lifting seal.

[10]The other actions either were transferred to another court or dismissed on other bases.

commenced in the Southern District of New York (and later transferred to the Eastern District of New York) were cited in plaintiff's Complaint in this Action (Docket No. 1, Compl. at 8 to 9 of 43 pages). The letters, which were attached to a letter from the Law Department of the City of New York seeking to inform the Court of plaintiff's fraudulent allegations, stated, in part, that plaintiff had "filed a number of manufactured lawsuits and complaints." Caruso, supra, No. 07CV1115 (Docket No. 25). In a subsequent letter, informing the Court that the plaintiff had agreed to return the settlement which he had obtained in both Eastern District cases, defendants reported that plaintiff stated that he had agreed to withdraw another Eastern District action (Perry v. James, No. 07CV3722) and to sign a stipulation that he would bring no further suits against certain defendants. The City of New York Law Department further represented that plaintiff had requested that the following statement be included in any documents submitted to the Court:

> "I, Kareem Perry, committed a fraud upon the Court and that I was never subject to inmate or staff abuse, and I did not work for the Department of Investigation."

Caruso, supra, No. 07CV1115 (Docket No. 32). The district court declined to consider sanctioning plaintiff in Caruso, supra, No. 07CV1115, given the defendants' decision not to take further action to vacate the settlement following plaintiff's agreement to repay the settlement (see Caruso, supra, No. 07CV1115, Docket No. 34).

After settlement was entered in Perry v. Boyd, No. 06CV3958, and the case closed, plaintiff submitted a similar letter (filed December 5, 2008) as he filed in Caruso, in which he states:

> I am writing to inform the Court that I committed perjury in the above-reference[d] matter, and fraud upon the Court.

All of the paragraph allegations in that action is false. The complaint was filed
out of greed and I hereby accept responsibility for my fraudulent actions.

I've sent a similar correspondence to Ms. Roslynn R. Mauskopf, the United States
Attorney for the Eastern District of New York.

Boyd, supra, No. 06CV3958 (Docket No. 35, plaintiff's letter to Magistrate Judge Bloom,

Dec. 3, 2008). Despite this admission, the court did not act in Boyd.

In one of the letters to the Inspector General, plaintiff admitted that one of his lawsuits

was

"a vindictive manufactured complaint premised upon the thought that you kicked
me to the gutter. No one thought I was an informant & definitely no inmate
would dare put their hands on me (picture that)"

(Goord, No. 06CV828, Docket No. 58, Order to Show Cause, letter plaintiff to Timothy M.

Crouse, Inspector General, Nov. 5, 2007, at 2, page 34 of 35 filed with Order). Copies of these

Orders and letters from plaintiff recanting his claims and admitting fraud were submitted with the

Order to Show Cause (Docket No. 58).

In the face of plaintiff's apparent admissions that he has filed fraudulent claims and

allegations in at least two other actions he has commenced in federal courts, and in light of the

similarity of some of the claims made in those cases to the claims asserted in the instant matter

and in at least one other case plaintiff has filed in the Western District, the Court required

plaintiff to show cause why his Complaint herein should not be dismissed as frivolous or

malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) in this action (Docket No. 58), as well as the

latest action he filed in this Court, see Perry v. Napoli, No. 09CV12, Docket No. 8 (Order

denying leave to proceed in forma pauperis and giving plaintiff time to show cause why the

action should not be dismissed as frivolous or malicious); see also Perry v. Fischer,

No. 08CV602 (N.D.N.Y.), Docket No. 56 (defense motion for sanctions arguing fraud on the Court grounds).

*Perry v. Napoli*

In that case, plaintiff, proceeding pro se, repeats the allegations of inmate harassment and lack of protection by defendants, this time prison officers at Southport Correctional Facility, reasserting other actions filed in this District, including this action, Perry v. Napoli, No. 09CV12, Docket No. 1, Compl, at pages 8 and 9 of 21, attachment Complaint ¶¶ 2, 4 (citing Goord, No. 06CV828 (W.D.N.Y.); Goord, No. 06CV447 (W.D.N.Y.); Perry v. Fischer, No. 08CV602 (N.D.N.Y.); and Caruso, No. 07CV1115 (E.D.N.Y.)).  Plaintiff  sought to file that case under seal (id. at pages 20-21 of 21, letter of plaintiff to Court Clerk, Dec. 22, 2008).  After the Court issued the Order to Show Cause, plaintiff moved for an extension of the show cause period to respond to July 12, 2009, Perry v. Napoli, No. 09CV12, Docket Nos. 11, 9, which was granted, id., Docket No. 12; see id. Docket No. 10 (granting earlier extension).  On July 10, 2009, plaintiff moved to withdraw this action "only because I do not have enough time to respond with the necessary documentary support," (Docket No. 13, Pl. motion to withdraw).  That motion currently is pending.

*Perry v. Fisher, Northern District Action*

Defendants in the Northern District of New York Fischer action, argue that plaintiff cannot deny the authenticity of the Eastern District of New York correspondence claiming fraud on the Court, noting that he admits their provenance in correspondence to defense counsel in this action, Fischer, supra, No. 08CV602 (N.D.N.Y.), Docket No. 56, defendants' memorandum at 4 n.4; id., defense counsel's declaration, Ex. 5, letter plaintiff to Assistant Attorney General David

State, May 11, 2007, with copy to counsel (hereinafter "State letter") (see also Docket No. 70, Defs. Atty. Decl. ¶ 4, Ex. 5). In that letter, plaintiff explains that he stated that he committed a fraud on the Court in the Eastern District in order to have a record that he was not cooperating with the Department of Investigation and, hopefully, avoid further harassment within the facility once word of his public recanting became known, id., Ex. 5, State letter, at 2-3. He then claims that he sent the letter to Judge Bloom in the Boyd case in an attempt to be prosecuted for perjury in an effort to obtain protection, id., Ex. 5, State letter at 4. Plaintiff concludes by offering, if he is indicted for this perjury and the cases are sealed, he would withdraw this case and pay attorney's fees (either the Attorney General's or appointed counsel's), or he would withdraw this action if it (and one of the Eastern District actions) were sealed, claiming that he did all this for his personal safety and security, id., Ex. 5, State letter at 4-5. Defendants in Fischer then move to dismiss as a Rule 11 sanction, id., and this motion is pending.

*Defendants' Motion to Dismiss*

In light of the Order to Show Cause, defendants now move to dismiss the Complaint under Rules 11 and 16. They argue that plaintiff has repeatedly misrepresented in his Complaint his litigation history for four Eastern and Southern District actions (Docket No. 62, Defs. Memo. at 2), relying upon fraudulent actions (by plaintiff's own admission). Defendants seek either dismissal, consideration of plaintiff's false filings in support of their pending summary judgment motion, or permit further, specific discovery from plaintiff on the fraud on the Court allegations (id. at 3). At a minimum, defendants consider these fraudulent filings as fodder for cross examination if this case goes to trial (id. at 3 n.2).

*Plaintiff's Response*

Plaintiff argues that defendants fail to support their sanctions motion (Docket No. 69, Pl. Atty. Decl. ¶ 10-12; Docket No. 69, Pl. Memo.)  Plaintiff's appointed counsel states that it is unclear whether plaintiff committed fraud on the Court in the Eastern District of New York (see Docket No. 69, Pl. Atty. Decl. ¶ 14).  Counsel also argues that defendants are not entitled to discovery on whether his alleged fraud on the Court is true since such discovery goes beyond the scope of discovering admissible evidence or materials leading to admissible evidence in this case (id.).  She concludes that there is no basis for sanctions or dismissal of this action (id.).

Plaintiff himself then recounts the incidents in which he was harassed, sought protection from prison officials, and was denied, and the steps he felt compelled to take–including making false statements–in order to gain some form of protection (Docket No. 69, Pl. Aff.).  He said that he was to be released when he was not eligible for release in order to gain keep lock status (id. ¶¶ 13-14).  Plaintiff next claimed that he sent an anonymous letter to Deputy Superintendent Henderson informing him that plaintiff had weapons hidden in his cell, getting himself placed in Special Housing Unit when razor blades were found in his cell (id. ¶¶ 28-29).  On October 13, 2006, he wrote to prison officials claiming to be a homosexual in order to gain protection (id. ¶ 32).  He alleges further assaults by inmates in November 2007 and May 2008 (id. ¶¶ 34, 35), at Elmira and Upstate Correctional Facilities.  It is in this context that plaintiff wrote to Magistrate Judge Lois Bloom in Boyd, on December 3, 2008, asking (in plaintiff's current view) that he "wanted to withdraw that case" in order to protect himself (id. ¶ 36).  He now claims that he "did this, and I made the other statements in that letter, to protect myself" (id.).  Plaintiff sought to explain himself further during oral argument, rather than in a written submission on the public

record, since the latter may endanger him (Docket No. 69, Pl. Memo. at 7; see Docket No. 69, Pl. Aff. ¶ 37). He fears that putting more detail in writing would put him in greater jeopardy within the facility and it would be unfair to risk his life or health by further disclosure or dismiss his case because of his lack of candor (see Docket No. 69, Pl. Aff. ¶¶ 37-38).

At oral argument, plaintiff admitted that he wrote the letter to the Eastern District of New York court that claims he perpetrated a fraud upon the Court, seeking to be indicted for perjury. He said he wrote them in order to obtain protection in prison. His counsel argued that, unlike the Boyd case, plaintiff has physical injuries to corroborate his claims in this case. Counsel denied that plaintiff was delusional or repetitive, distinguished from cases where actions were dismissed under the Court's inherent authority or in violation of Rule 11.

*Defense Reply*

Defendants briefly reply that Rule 11 sanction of dismissal is appropriate here because of plaintiff's bad faith conduct (Docket No. 70, Defs. Atty. Decl. ¶ 3).

## DISCUSSION

I. Applicable Standards

Defendants latest motion (Docket No. 61) (and the Order to Show Cause, Docket No. 58) is a motion to dismiss and arise from Federal Rule of Civil Procedure 11.

A. Motion to Dismiss

Defendants have moved to dismiss the Complaint. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). As the Supreme Court held in Bell

Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," id., at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46); Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007); see also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009). To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 570; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5. A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985). In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

B.      Rules 11 and 16

Rule 11(b) states that presentation of a pleading (by signing, filing, submitting, or later advocating it) an unrepresented party "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass . . . ; (3) the factual contentions have

evidentiary support or, if specifically so identified, are reasonably based on belief or a lack of information . . . ," Fed. R. Civ. P. 11(b)(1), (3). If, after notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the Court may impose sanctions on the party that violated the rule, id. R. 11(c)(1), (3) (on court's own initiative). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court," id. R. 11(c)(4). The Order imposing the sanction must describe the sanctioned conduct and explain the basis for the sanction, id. R. 11(c)(6). This Rule applies to pro se or formerly pro se litigants as well as parties represented by counsel.

Rule 16(f) authorizes the Court to impose sanctions (entry of "any just orders" including discovery sanctions authorized under Rule 37(b)(2)(A)(ii)-(vii)) if a party fails to obey a pretrial Order, Fed. R. Civ. P. 16(f)(1)(C). Included among the Rule 37(b) sanctions authorized for a Rule 16(f) violation are prohibiting the disobedient party from supporting or opposing a claim, or introducing evidence to support that claim, striking pleadings, and dismissal of the action in whole or in part, see Fed. R. Civ. P. 37(b)(2)(A)(ii), (iii), (v).

C.    In Forma Pauperis Status and 28 U.S.C. § 1915

While the Court has the power to grant indigent plaintiff's in forma pauperis status, see 28 U.S.C. § 1915, the Court "shall dismiss" an action "at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious; [or] fails to state a claim on which relief may be granted," id. § 1915(e)(2)(B)(i), (ii). Dismissal of duplicative or repetitious litigation of identical causes of action is sometime appropriate, DePonceau v. Bush, No. 04CV6240, 2004 U.S. Dist. LEXIS 13819, at *5 (W.D.N.Y. June 4, 2004)(Elfvin, J.) (citing Blake v. Bentsen,

16

No. 95CV94, 1995WL428694, at *2 (E.D.N.Y. July 11, 1995) (dismissing repetitious litigation as abusive and malicious)).

II.    Allegations of Fraud upon this Court

Before reaching the merits of plaintiff's claims and the defenses asserted in defendants' summary judgment motion, the issue of whether plaintiff has committed fraud upon this Court (or other federal courts) first should be addressed.

Plaintiff's allegations here mirror the allegations raised in cases in the Eastern District of New York that plaintiff later recanted and stated were fraudulent (as well as those in the Fischer case pending in the Northern District of New York).  The common allegations were that plaintiff served as an informant for a New York City law enforcement agency, that fact was learned by inmates in the facility that plaintiff resided in, that plaintiff was harassed or worse by those inmates, and defendant correctional officers failed to protect plaintiff or relocate him away from this danger.  In fact, plaintiff alleged some of the same incidents that occurred in Elmira in 2006 in the Caruso action in the Eastern District and in the Fischer action in the Northern District as are alleged in the case at bar.  But plaintiff in two Eastern District cases (Caruso and Boyd) repeatedly stated that none of this was true, that he never served as an informant and, if he did, no other inmates learned of it and would ever harm him, admitting that these allegations were fraud upon the Court.

Thus, the issue before this Court is should plaintiff be allowed to pursue these same allegations here despite recanting them and calling them frauds upon the Court in another district.  And, if not, what should be the appropriate sanction under Rules 11 and 16(f) for this conduct.  The Order to Show Cause asked plaintiff to show cause why, in addition to dismissal of the

17

action, he should not be sanctioned by means such as compensating the Clerk of Court for expenditure of judicial resources, payment of filing fee (of $350) waived by Order granting him in forma pauperis status, reimbursing the expenses of appointed counsel for representing plaintiff since June 2008 (Docket No. 37).

Plaintiff focuses only upon the statement made in Boyd, calling it his withdrawal of that case (or "had inappropriately commenced," as his counsel argues, Docket No. 69, Pl. Memo. at 3), but does not address the virtually identical admission he made in the Caruso action.

The Court takes judicial notice, from the dockets in the cases filed by plaintiff, a pattern shown in this case and the others plaintiff has filed (as well as the initial prison grievances commenced). The pattern is that other inmates learn or believe that plaintiff was an informer and begin to harass him (or worse) as a result. Plaintiff then requests protection or reassignment because of this harassment and is denied by prison officials. Plaintiff then grieves this denial or later sues (pro se) these officials, disclosing in the process his name (sometimes his prison identification number) and the allegations on the public record. When litigated, most of the cases are terminated, either by settlement or (as indicated in one grievance, he tells one prison official to just forget it, see Docket No. 52, Mootz Decl. ¶ 4) plaintiff moves to dismiss or withdraw it. From reviewing some of these cases, it appears plaintiff's voluntary dismissals are due to the fact that his allegations became a matter of public record by his filing, in his mind further endangering him to inmate harassment. But plaintiff then commences a new action, sometimes alleging again claims raised in the terminated actions or claims of some additional harassment (if, for example, he has been reassigned to a new facility and the harassment follows him there). The venue of filing changes as he is moved within this state from one judicial district to another. If

18

the case persists, plaintiff often seeks to have the case sealed, but (as in this case, see Docket No. 67; see also Caruso, No. 07CV1115 (E.D.N.Y.), text order of Apr. 13, 2009, denying plaintiff's motion, Docket No. 35, to seal that case) this request often has been denied or later revoked, see, e.g., Fischer, supra, No. 08CV602 (N.D.N.Y.), Docket No. 60 (noting denial of motions to seal in other cases).

Plaintiff in two Eastern District of New York cases admitted that his similar allegations there were false and a fraud upon the Court. According to his own letter to defense counsel in this case (and made part of the record in the Northern District of New York's Fischer case), he made that representation falsely in order to protect himself from further inmate harassment. The inconsistency of raising claims and then stating that they were false seems, as plaintiff later declared, "sad as it may sound or bizarre as it may seem," Fischer, supra, No. 08CV602, No. 56, Def. Atty. Decl., Ex. 5, State letter at 4 (Docket No. 70, Ex. 5). Plaintiff explains that the letter in Boyd sought merely to withdraw that case (see Docket No. 69, Pl. Aff. ¶ 36). But from plaintiff's withdrawal of other actions, he is familiar with the difference between merely withdrawing or terminating a case and declaring that the case was fraudulent to begin with. The last sentence in the Boyd letter noted that a copy was sent the then-United States Attorney, in apparent attempt to obtain a federal perjury charge (see Fischer, supra, No. 08CV602, No. 56, Def. Atty. Decl., Ex. 5, State letter at 4). Even if plaintiff's latest explanation is credited, he does not explain the virtually identical letter he filed in Caruso, or the fact that he filed these letters in cases that were settled and closed.

Plaintiff appears to be in a quandary; if his grievances and federal Complaints are true and he faced continuous, unprotected inmate harassment from disclosure of his role as an

informant, by filing the Complaint he increases the risk that he will gain additional harassment as inmates learn (or have their belief confirmed) of plaintiff's activities through plaintiff's own litigation. Yet he does not know how to complain about the lack of protection when this harassment arises where the making of that Complaint itself may lead to further harassment. He seeks to vindicate his claims, but as privately and confidentially as he can. But if he does not grieve or file Complaints, his lack of protection from this harassment will not be vindicated. Plaintiff has attempted to address this quandary by making false statements (denying the truth of his claims, falsely accusing himself of prison offenses) in order to get heightened protection within the facility, even at the price of punitive segregation. Essentially, plaintiff would lie to protect himself and use any process available to remove him from general population.

But this quandary does not justify plaintiff's inconsistent (at best) or perjurious (at worst) actions in the conduct of his litigation. It appears that plaintiff would say or do anything in his belief that so saying or doing would protect himself from alleged inmate harassment, harassment he later has denied facing in two federal actions. One possible solution would have been by proceeding by pseudonym at the outset of the action or having the case sealed, which he attempted to do in this case. Even if cases are sealed eventually at trial or dispositive motion a public record would have to be made of plaintiff's claims, hence as he believes exposing him to further harassment. As stated in the Order denying plaintiff's motion to seal and proceed by pseudonym (see Docket No. 67, Order at 2, 3-6), plaintiff sought to seal this action three years after it was filed without before this seeking any protections against public disclosure and plaintiff failed to allege that other inmates learned of his alleged activities through his filings in this case. Only in response to this defense motion to dismiss does plaintiff now assert any post-

filing harassment or assaults (Docket No. 69, Pl. Aff. ¶¶ 34-35), but plaintiff does not claim that these arose from inmates learning of his filing and prosecution of this action (rather than from other sources of inmate knowledge of plaintiff's activities).

While there is no basis for granting defendants' motion merely upon the disclosure plaintiff made of his other litigation in the Complaint (<u>cf.</u> Docket No. 69, Pl. Atty. Decl. ¶¶ 11-12; Docket No. 69, Pl. Memo. at 3-4), this action should be dismissed as frivolous and malicious action under 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff has asserted claims arising from defendants' failure to protect him in Elmira in 2006 in this case and in <u>Caruso</u>, but later recanted that allegation in <u>Caruso</u> alleging that the claim was a fraud on the Court. Plaintiff (regardless of his motives) cannot play one district against another and assert as valid allegations from the same fact pattern in one Court that he calls a fraud in another. This is also an instance of duplicative or repetitious litigation that should be dismissed by the Court <u>sua sponte</u>, <u>see</u> <u>DePonceau</u>, <u>supra</u>, 2004 U.S. Dist. LEXIS 13819, at *5. By not withdrawing the case at bar once plaintiff submitted the "fraud on the court" letter in <u>Caruso</u> in December 2008, the continued prosecution of the Complaint here was for an improper purpose, to harass defendants and put into question the factual basis for the allegations contained in that pleading, <u>cf.</u> Fed. R. Civ. P. 11(b)(1), (3).

As a result, defendants' motion to dismiss pursuant to Rule 11 and 28 U.S.C. § 1915(e)(2)(B) is **granted**. In light of this dismissal and the nature of plaintiff's self-discredited allegations, the Court need not consider the merits of defendants' summary judgment motion and this motion is thus **dismissed as moot**.

III.     Inmate Litigation under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act established a "three-strike" rule which bars indigent inmates from commencing frivolous, malicious or meritless litigation after having three such cases dismissed, see Burns, supra, No. 08CV5272 (E.D.N.Y.), Docket No. 5, Order at third to fourth unnumbered pages (Cogan, J.).  Subsection (g) of 28 U.S.C. § 1915 provides that

> "In no event shall a prisoner bring a civil action or appeal a judgment in a civil case or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury,"

28 U.S.C. § 1915(g).

According to defendants count, dismissal of this action under § 1915(g) would be the third "strike" against plaintiff (Docket No. 62, Defs. Memo. at 2 n.1), counting the dismissals in Burns, No. 08CV5272 (E.D.N.Y.) and Boyd, No. 06CV3958 (E.D.N.Y.), as previous "strikes".

This dismissal in the case at bar is expressly upon the grounds of it **being frivolous and failing to state a cause of action and constitutes a "strike"** under 28 U.S.C. § 1915(g), see Burns, supra.  From the Court's review of the proceedings in plaintiff's other cases, however, this case will constitute only the second strike against plaintiff, as the dismissal in Boyd predated the allegations of fraud on the Court and those allegations were later made before the Eastern District of New York but were not acted upon.  The only other strike plaintiff had is the dismissal in Burns.

IV.     Further Sanctions

In addition to possible dismissal of this action, the Court ordered the parties to show cause why other sanctions (such as payment of filing fees or reimbursing appointed counsel's expenses) should not be imposed (Docket No. 58).  In light of the fraud on the Court discovered in similar actions in other districts, allegations repeated in this action and in other actions in this and other districts, dismissal of this action alone is not a sufficient sanction to prevent future abuse of this Court or the federal judiciary in general.  As discussed above, plaintiff has in the past filed new actions after the dismissal of actions and asserted otherwise dismissed claims in these new actions.  Pending before this Court is an example of this conduct; in Perry v. Napoli, No. 09CV12, plaintiff asserts allegations from this case in support of his claims in the new case. He must be deterred from doing that in the future.

Other sanctions have been considered by this Court.  For example, since plaintiff was granted in forma pauperis status he has not paid the filing fee for commencing this action.  One sanction could have been to compel him to pay the $350 filing fee.  While a substantial amount to an inmate, the filing fee alone will not address the true costs of plaintiff's activities, in particular the time expended by appointed counsel to try to vindicate his claims in this case as well as the costs incurred in other cases he has made.  Payment of the filing fee for this case also will not deter him from filing future cases based upon these discredited allegations.  Another possible sanction is plaintiff paying the reasonable defense costs for defendants, including their attorneys' fees, but defendants here have been represented by the New York State Attorney General's office so determination of their fee would be speculative and lead to prolonged, ancillary litigation.  A monetary sanction of plaintiff's appointed counsel's attorneys' fee (at

23

counsel's customary rates) should be a sufficient deterrent to plaintiff repeating his allegations and tactics in this or another Court. This is especially appropriate since, as noted above, this dismissal only constitutes the second strike and plaintiff would not be barred from repeating these tactics in a new action. Determining appointed counsel's fee, based upon her firm's standard rates, is easily obtained.

Another potential sanction is having any future actions commenced by plaintiff reviewed by the Court prior to being filed and served. Defendants cite three cases which, although not dismissing pursuant to Rule 11 (but under 28 U.S.C. § 1915), imposed sanctions of prior review after dismissing frivolous actions (often after the plaintiff had filed numerous frivolous actions), see Collins v. Cheney, No. 07CV725, 2007 U.S. Dist. LEXIS 89596 (W.D.N.Y. Dec. 3, 2007) (Telesca, J.); Selevan v. Pataki, No. 06CV635, 2006 U.S. Dist. LEXIS 91491 (W.D.N.Y. Dec. 15, 2006) (Arcara, Ch. J.); DePonceau, supra, 2004 U.S. Dist. LEXIS 13819 (W.D.N.Y. June 4, 2004) (Elfvin, J.) (Docket No. 70, Defs. Atty. Decl. ¶ 3). But prior screening of future pleadings here might not be appropriate. The sanctionable conduct here is not filing incoherent, frivolous allegations (as was in the cases cited above), but the conduct was stating as true allegations plaintiff in other courts has denied as false and fraud upon the Court and plaintiff pursuing these claims publicly. Also, plaintiff is now filing actions in the Northern District of New York (where he is currently housed) and this Court may not be able to monitor plaintiff's filings in other districts or have those courts screen cases he files there pursuant to this Court's Order. In addition, if plaintiff were to proceed pro se as an inmate and seek in forma pauperis status (as he has done in many of these actions), there would be some initial screening of his Complaints in any event. The sanction better than prior screening, however, is the threat of

barring any further actions by plaintiff under the three strikes provision of § 1915(g). If plaintiff files another frivolous action (or one based upon the allegations dismissed in this action and disavowed by plaintiff in other cases) the dismissal of that new action would be the third, disqualifying strike. This section then would provide an absolute bar to future cases rather than the sanction of having his filings screened.

The appropriate sanction here, however, is to have plaintiff pay for the legal services he enjoyed after counsel was appointed for him, despite his assertion that the claims he was prosecuting were frauds upon the Court. The Court initially found plaintiff's allegations sufficiently compelling to grant his motion for appointment of counsel (see Docket No. 37). The Court expended its good will with the bar in accepting appointment in this case. The Court commends Ms. Lisa Coppola and her firm for accepting this appointment and enduring this matter. Ms. Coppola and her colleagues struggled valiantly in advocating plaintiff's (ultimately conceded) positions.

As a result, plaintiff **is ordered** to pay his appointed counsel's reasonable attorney's fees and expenses for representing him in this frivolous action as a sanction for its commencement. Pursuant to Rules 11 and 16(f), the Court **orders plaintiff to reimburse his counsel's reasonable, regular attorney's fees and expenses**. Plaintiff's counsel shall submit an application within fifteen (15) days of entry of this Order, and plaintiff may respond within thirty (30) days of entry of this Order, and the Court then will determine the appropriate amount of plaintiff's sanction to award to appointed counsel.

CONCLUSION

For the reasons stated above, on the Order to Show Cause (Docket No. 58) and defendants' motion to dismiss (Docket No. 61) is **granted and the Complaint in this action is dismissed with prejudice**. This dismissal constitutes a "strike" under 28 U.S.C. § 1915(g) as this action was frivolous and fails to state a cause of action, and is the second strike for this plaintiff.

Plaintiff is further **sanctioned** under Rules 11 and 16 and **ordered to reimburse the reasonable, ordinary expenses of appointed counsel for representing plaintiff since June 30, 2008** (see Docket No. 37). Plaintiff's appointed counsel shall submit a fee application within fifteen (15) days of entry of this Order and plaintiff may respond to this application within thirty (30) days of entry of this Order; the Court then will determine the appropriate monetary sanction to be imposed upon plaintiff.

Defendants' motion for summary judgment (Docket No. 44) is **dismissed as moot**.

So Ordered.

/s/ Hugh B. Scott
Honorable Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
August 18, 2009